# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicholas Matthew Jack                    :
                                         :
            v.                           :
                                         :
Commonwealth of Pennsylvania,            :
Department of Transportation,            :
Bureau of Driver Licensing,              :    No. 1358 C.D. 2021
                        Appellant        :    Submitted: July 15, 2022


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON            FILED:  October 20, 2022


           The Pennsylvania Department of Transportation, Bureau of Driver
Licensing (DOT) appeals from the November 4, 2021 order of the Court of Common
Pleas of Allegheny County (trial court) sustaining Nicholas Matthew Jack's
(Licensee) statutory appeals from a 12-month driver's license suspension and a 12-
month commercial driving privilege disqualification[1] imposed by DOT, pursuant to
the Vehicle Code's Implied Consent Law, 75 Pa. C.S. § 1547(b) (Implied Consent
Law), as a result of Licensee's refusal to submit to chemical testing upon his arrest

---

[1] 75 Pa. C.S. § 1613 (relating to implied consent requirements for commercial motor
vehicle drivers).

for driving under the influence of alcohol or a controlled substance[2] (DUI). Upon review, we reverse.

At around 11:30 p.m. on the night of April 6, 2021, Plum Borough Police Department Officer Eric Brant[3] was dispatched to the scene of a reported vehicle accident in the parking lot of the S&T Bank in Plum Borough, Pennsylvania. *See* Notes of Testimony November 4, 2021 (N.T.) at 5-6; Reproduced Record (R.R.) at 25a-26a. Upon arriving, Officer Brant observed that a vehicle had collided with a tree in the bank's landscaping, and that another officer already on the scene, Officer Rupert, had placed Licensee, the driver of the vehicle, in handcuffs. *See* N.T. at 7-8; R.R. at 27a-28a. In addition to Licensee and the other officer, a tow truck driver was also on the scene upon Officer Brant's arrival. *See* N.T. at 8; R.R. at 28a. Officer Brant aided Officer Rupert in helping Licensee up and escorting him back to Officer Brant's patrol vehicle. *See* N.T. at 8; R.R. at 28a. Officer Brant observed that Licensee's eyes were glassy and bloodshot, that Licensee needed to be supported because he was having trouble walking, and that Licensee displayed "goose eggs" on his head, which Officer Brant attributed to the accident. *See* N.T. at 14-15; R.R. at 34a-35a. An EMT administered aid to Licensee and his passenger. *See* N.T. at 10; R.R. at 30a. Licensee was then informed he was under arrest, removed from the patrol vehicle, and taken to the hospital by ambulance.[4] *See* N.T. at 11; R.R. at 31a.

---

[2] 75 Pa. C.S. § 3802.

[3] Officer Brant had been with the Plum Borough Police Department for approximately two years. Notes of Testimony November 4, 2021 (N.T.) at 5; Reproduced Record (R.R.) at 25a.

[4] Officer Rupert accompanied Licensee in the ambulance to the hospital. *See* N.T. at 13; R.R. at 33a.

After interviewing witnesses at the accident scene, Officer Brant proceeded to the hospital, where he found Licensee already in the emergency room. *See* N.T. at 12 & 14; R.R. at 32a & 34a. Officer Brant then read to Licensee the four blood testing warnings contained in DOT's DL-26B consent to blood test form[5] verbatim and in their entirety. *See* N.T. at 15-16 & 27; R.R. at 35a-36a & 47a. After reading the warnings, Officer Brant informed Licensee that he needed to provide a "yes" or "no" response to the question of whether he would submit to the chemical testing/blood draw. *See* N.T. at 17 & 27; R.R. at 37a & 47a. Instead of providing a direct "yes" or "no" to the question, Licensee kept repeating questions such as "what do you want, what do you want me to do." *See* N.T. at 17 & 27; R.R. at 37a & 47a.

---

[5] The DL-26B form's blood testing warnings read as follows:

> It is my duty as a police officer to inform you of the following:
>
> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of blood.
>
> 3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months. If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.
>
> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

R.R. at 56a.

Officer Brant did not hand the form to Licensee for him to read or review. *See* N.T. at 27; R.R. at 47a. Licensee never asked for the warnings to be reread and did not indicate that he did not understand the warnings or that he required further explanation. *See* N.T. at 18; R.R. at 38a. Licensee appeared alert and awake and never appeared unconscious to Officer Brant. *See* N.T. at 18-19; R.R. at 38a-39a. Licensee never told Officer Brant that he would allow a blood sample to be drawn for chemical testing. *See* N.T. at 19; R.R. at 39a. After a full minute waiting without receiving a direct answer, Officer Brant determined that Licensee refused to consent to the requested blood draw.[6] *See* N.T. at 17-18; R.R. at 37a-38a.

After Officer Brant left the room, hospital personnel entered a short time later and drew blood from Licensee's arm without objection from Licensee. *See* N.T. at 19-20 & 27-28; R.R. at 39a-40a & 47a-48a. Officer Brant later secured a search warrant and obtained the results of the blood draw, which results were later used by the Commonwealth in Licensee's criminal prosecution for DUI. *See* N.T. at 21; R.R. at 41a.

Thereafter, by letters dated May 12, 2021, DOT notified Licensee that, as a result of his refusal to submit to chemical testing, his driving privilege would be suspended and his commercial driving privilege disqualified for a period of 12 months. *See* R.R. at 6a-7a & 12a-15a. Licensee appealed both suspensions to the trial court.[7] *See* R.R. at 3a-17a. The trial court conducted a hearing and sustained

---

[6] Officer Brant signed the DL-26B form on his own behalf and on the line indicating that the vehicle operator had refused to sign after being advised of the refusal warnings. *See* R.R. at 56a.

[7] Licensee appealed the driver's license suspension in the trial court on May 28, 2021. *See* R.R. at 9a-17a. Licensee then appealed the commercial driver's license disqualification on June 1, 2021, in the Westmoreland County Court of Common Pleas. *See* R.R. at 2a-7a. On September

the appeals on November 4, 2021. *See* R.R. at 21a-57a. DOT timely appealed to this Court. *See* R.R. at 58a-61a.

DOT raises three claims on appeal.[8] First, DOT claims that the trial court abused its discretion in sustaining hearsay objections to Officer Brant's testimony about what eyewitnesses told him concerning their observations at the scene of the accident prior to Officer Brant's arrival. *See* DOT's Br. at 4 & 15-20. Second, DOT argues that the trial court erred by holding that Licensee did not refuse the request to submit to chemical testing because Licensee sustained head injuries and was otherwise confused. *See id.* at 4 & 21-26. Third, DOT claims the trial court erred by holding that Licensee did not refuse Officer Brant's request that Licensee submit to chemical testing because the hospital later obtained a blood sample for medical purposes, the results of which Officer Brant later obtained by search warrant. *See id.* at 4 & 27-29. We address DOT's second argument first, as it is dispositive.

Initially, we note:

> To sustain a license suspension under [the Implied Consent Law], DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once

17, 2021, the Westmoreland County Court of Common Pleas ordered the matter transferred to the trial court, which transfer occurred on September 30, 2021. *See* R.R. at 19a-20a.

[8] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion." *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (quoting *Wright v. Dep't of Transp., Bureau of Driver Licensing,* 788 A.2d 443, 445 (Pa. Cmwlth. 2001)). In the instant matter, no dispute exists as to three of these elements: Licensee was arrested for drunken driving based on reasonable grounds to believe that he was driving under the influence, Officer Brant clearly requested that Licensee submit to chemical testing, and, by reading the DL-26B form, Officer Brant warned Licensee that his refusal to submit to chemical testing would result in a license suspension. DOT challenges only the trial court's conclusion that Licensee did not refuse to submit to the requested chemical testing.

"The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015). Our Supreme Court has stated that "any response from a licensee that is anything less than an unqualified, unequivocal assent to submit to testing constitutes a refusal, subjecting the licensee to the one-year suspension." *Id.* (internal quotation marks and citation omitted); *see also Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492, 497 (Pa. Cmwlth. 2018) (observing that "Pennsylvania courts have long and consistently held that anything less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal to consent thereto"). "Further, an explicit refusal is not required to find a licensee refused to consent to chemical testing; a licensee's conduct may constitute a refusal." *Factor*, 199 A.3d at 497 (internal quotation marks omitted).

6

Here, Licensee did not provide an unqualified, unequivocal assent to submit to chemical testing. Officer Brant testified that he did not understand Licensee's response of "what do you want, what do you want me to do" to be an unequivocal assent to the request. Instead, Officer Brant informed Licensee that Licensee needed to respond with a "yes" or "no" to the request to submit to chemical testing and, after a minute of waiting without receiving such a response, determined that Licensee had refused. Officer Brant's determination comports with the requirement that a motor vehicle operator provide an unqualified and unequivocal assent to submit to chemical testing. *See Nardone*; *Factor*. The trial court erred in determining that Licensee did not refuse to submit to chemical testing based on Officer Brant's testimony, which the trial court did not find lacked credibility.

Additionally, to the extent the trial court implied that Licensee was incapable of assenting to chemical testing by virtue of a head injury suffered in the accident,[9] the evidence presented before the trial court does not support such an inference. As this Court has explained,

> a motorist's self-serving testimony that []he was incapable of providing a knowing and conscious refusal of a chemical test is insufficient to meet [his] burden of proving incapacity. Rather, a licensee's incapacity defense must be supported by competent medical evidence where []he suffers from no obvious disability.

*Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018) (internal citations omitted); *see also Dep't of Transp., Bureau of Driver Licensing v. Walsh*, 606 A.2d 583, 585 (Pa. Cmwlth. 1992) (holding that "[w]here a licensee has sustained injuries but does not suffer from an obvious

---

[9] *See* Trial Court Opinion filed March 28, 2022, at 3-4.

7

inability to comply with the request to be tested, competent medical testimony is required to prove that a knowing and conscious refusal could not be made").

Here, Licensee provided no testimony, self-serving or otherwise, that his mental acuity was somehow reduced by the accident. Further, the trial court heard no competent medical testimony indicating that Licensee's cognitive ability had been reduced as a result of the accident. Instead, the only evidence of Licensee's alleged head injury came from Officer Brant's statement that Licensee appeared to have "goose eggs" on his head. This statement was unsupported by competent medical evidence, and in light of Officer Brant's further testimony that Licensee appeared alert and awake at all times, it was insufficient to excuse Licensee's equivocal response to the request for chemical testing. Accordingly, the trial court erred to the extent it excused Licensee's failure to assent to the requested chemical testing based on a possible head injury.

Further, that the Commonwealth later convicted Licensee of DUI based on the results of the blood draw conducted by hospital personnel for medical purposes after Licensee's refusal of Officer Brant's request for chemical testing is of no moment. The fact remains that, while Licensee did submit to chemical testing for medical purposes, and the Commonwealth ultimately attained the results of that chemical testing for use in its prosecution of Licensee for DUI, Licensee refused to provide an unqualified, unequivocal assent to chemical testing upon request of the police as required by the Implied Consent Law. As this Court has explained, "the mere fact that a licensee has submitted to blood tests from hospital personnel prior to or subsequent to his refusal to accede to the request of the arresting officer does not absolve him from the mandated suspension provisions of Section 1547." *Dep't*

*of Transp. v. Murdock*, 512 A.2d 100, 101 (Pa. Cmwlth. 1986). As we have further explained,

> [t]he Pennsylvania Supreme Court has stated that "driving is not a property right; rather it is a privilege. To obtain the benefit of such a privilege, a driver must abide by the laws of the Commonwealth relating to the privilege." *Commonwealth v. Zimmick*, [] 653 A.2d 1217, 1222-23 ([Pa.] 1995).
>
> > Where the driver refuses to take a chemical test, that refusal violates a condition for the continued privilege of operating a motor vehicle and is properly considered as a basis for suspension of that privilege. . . . The only fact necessary to the administrative determination is the driver's refusal to comply with the chemical test request after being taken into custody.
>
> *Dep't of Transp., Bureau of Driver Licensing v. Wysocki*, [] 535 A.2d 77, 79 ([Pa.] 1987).

*Pollock v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 1178 C.D. 2009, filed Jan. 29, 2010),[10] slip op. at 4. Thus, the fact that Officer Brant ultimately secured, after obtaining a search warrant, the results of Licensee's chemical testing, which results were later used in the Commonwealth's criminal prosecution of Licensee, has no bearing on the civil consequences of Licensee's refusal to assent to chemical testing upon request of the police prior to the drawing of his blood for medical purposes. *See Murdock*; *Pollock*.

---

[10] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

For these reasons, we find that the trial court erred by determining that Licensee did not refuse chemical testing under the facts of this case. Accordingly, we reverse the trial court's order sustaining Licensee's statutory appeals of his license suspension and commercial license disqualification.[11]

_____

CHRISTINE FIZZANO CANNON, Judge

Judge Wallace dissents.

---

[11] As a result of our determination that the trial court erred by finding that Licensee had not refused the request for chemical testing, we need not address DOT's first argument regarding alleged hearsay testimony precluded from the trial court's hearing in this matter.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Nicholas Matthew Jack | : | |
| | : | |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | No. 1358 C.D. 2021 |
| Appellant | : | |

O R D E R

AND NOW, this 20th day of October, 2022, the November 4, 2021 order of the Court of Common Pleas of Allegheny County is REVERSED.

_____

CHRISTINE FIZZANO CANNON, Judge